**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| PINOS PRODUCE INC. and PRODUCTORA AGRICOLA INDUSTRIAL DEL NOROESTE S.A. DE C.V.,<br>Plaintiffs<br>v.<br>UNITED STATES, U.S. CUSTOMS AND BORDER PROTECTION, and RODNEY SCOTT, COMMISSIONER OF CUSTOMS,<br>Defendants. | Court No. 26-05167 |

**COMPLAINT**

Plaintiffs Pinos Produce Inc. ("PPI") and Productora Agricola Industrial del Noroeste S.A. de C.V. ("Productora" or "PAINSA"), by and through its undersigned attorneys, allege the following as their complaint in this case.

1. PAINSA is a Mexican producer and exporter of products that are subject to the antidumping duty ("ADD") order on fresh tomatoes from Mexico (Case No. A-201-820). PPI is an importer of fresh tomatoes from Mexico that are exported by PAINSA.

2. On July 17, 2025, the U.S. Department of Commerce ("Commerce") published the ADD order on fresh tomatoes from Mexico. *Fresh Tomatoes From Mexico: Termination of Suspension Agreement, Rescission of Administrative Reviews, and Imposition of an Antidumping Duty Order*, 90 Fed. Reg. 33,363 (July 17, 2025).

3. Also on July 17, 2025, Commerce issued instructions (Message 5198408) to U.S. Customs and Border Protection ("CBP") establishing individual exporter-specific cash deposit rates for seven exporters who were selected as mandatory respondents and a 17.09 percent *ad valorem* rate for "all other" exporters who had not been selected as mandatory respondents.

4. Since PAINSA had not been selected as a mandatory respondent, it was assigned the all other cash deposit rate of 17.09 percent.

5. Since July 17, 2025, PPI has imported tomatoes produced and exported by PAINSA at a cash deposit rate of 17.09 percent *ad valorem* under Case No. A-201-820-000.

6. On October 6, 2026, CBP issued two Notices of Action revising the cash deposit rate for PPI's entries of PAINSA's tomatoes made between July 14, 2025, and August 28, 2025 (the "October 6 Notices").

7. PPI made those entries under the "all others" case number, A-201-820-000, which carries a cash deposit rate of 17.09 percent *ad valorem*.

8. CBP changed those entries to case number A-201-820-995 and a cash deposit rate of 273.43% in the entry data in the Automated Commercial Environment (ACE).

9. Case number A-201-820-995 applies to a company named Rancho Los Pinos S. de R.L. de C.V. ("Rancho Los Pinos"), which had been a mandatory respondent in the investigation, and whose rate had been based on adverse facts available. Case number A-201-820-995 carries a cash deposit rate of 273.43 percent *ad valorem*.

10. On October 22, 2026, CBP issued another Notice of Action to PPI (the "October 22 Notice").

11. The October 22 Notice requires that each entry of tomatoes exported by PAINSA after October 22, 2026, be secured by a single transaction bond ("STB") in the amount of 256.43 percent *ad valorem*.

12. According to the October 22 Notice, that amount represents the difference between the adverse-facts-available cash deposit rate of 273.43 percent and the "all others" rate of 17.09 percent.

13. On October 23, 2026, counsel for Plaintiffs asked CBP to rescind the STB requirement in the October 22 Notice.

14. On November 9, 2026, CBP declined to rescind the STB requirement.

15. This Court has jurisdiction over this matter by reason of 28 U.S.C. § 1581(i)(1)(B), which confers upon the Court exclusive jurisdiction over civil actions commenced against the United States that arises out of any law of the United States providing for tariffs on the importation of merchandise for reasons other than the raising of revenue, and/or 28 U.S.C. § 1581(i)(1)(D) which confers upon the Court jurisdiction over the administration and enforcement of matters identified in 28 U.S.C. § 1581(i)(1)(A)-(C) and 28 U.S.C. § 1581(a)-(h).

## PLAINTIFFS' STANDING TO COMMENCE THIS ACTION

16. Both PAINSA and PPI are adversely affected or aggrieved by the challenged agency actions and, therefore, have standing to commence this appeal pursuant to 28 U.S.C. § 2631(i).

## TIMELINESS OF THIS ACTION

17. A civil action under 28 U.S.C. § 1581(i) must be commenced "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

18. Plaintiffs' claims arise from CBP's October 6, 2026, and October 22, 2026, Notices of Action and CBP's refusal to rescind the STB requirement.

19. Plaintiffs commenced this action within two years after each claim accrued and therefore this action is timely filed in accordance with 28 U.S.C. § 2636(i).

## STATEMENT OF FACTS

20. Commerce initiated its antidumping investigation on fresh tomatoes from Mexico more than 30 years ago on April 18, 1996. *See Initiation of Antidumping Duty Investigation: Fresh Tomatoes from Mexico*, 61 Fed. Reg. 18,377 (Apr. 25, 1996) (Case No. A-201-820).

21. Six months later, Commerce made a preliminary determination that fresh tomatoes from Mexico were being sold in the United States at less than fair value. *See Notice of Preliminary Determination of Sales at Less Than Fair Value and Postponement of Final Determination: Fresh Tomatoes from Mexico,* 61 Fed. Reg. 56,608 (Nov. 1, 1996).

22. In the preliminary results, Commerce calculated an "estimated weighted average dumping margin" for seven mandatory respondents, including Ranchos Los Pinos S. de R.L. de C.V. ("Rancho Los Pinos"). The preliminary dumping margin for Rancho Los Pinos was 10.26 percent.

23. The "All Others" rate assigned to exporters that had not been selected as mandatory respondents was 17.56 percent.

24. On October 28, 1996, Commerce entered into a Suspension Agreement to pause the investigation. *See Suspension of Antidumping Investigation: Fresh Tomatoes from Mexico*, 61 Fed. Reg. 56,618 (Nov. 1, 1996).

25. The investigation remained effectively on hold for over two decades through a series of successive suspension agreements.

26. In May 2019, Commerce announced it was resuming the investigation and that the investigation would continue "as if" Commerce had published the 1996 preliminary determination on May 7, 2019. *See Fresh Tomatoes from Mexico: Termination of Suspension Agreement, Rescission of Administrative Review, and Continuation of the Antidumping Duty Investigation*, 84 Fed. Reg. 20,858, 20,860 (May 13, 2019).

27. This notice also stated that the "resumed" investigation would examine the period from April 2018 to March 2019 (and not the 1995-96 period examined in the original investigation). *Id.* at 20,860-61.

28. Commerce did not resume the investigation of the mandatory respondents that had been the subject of the 1996 preliminary determination but instead selected all new respondents. Neither Rancho Los Pinos nor PAINSA were selected as mandatory respondents for this new investigation.

29. On October 25, 2019, Commerce published its final determination in the continued investigation. *See Fresh Tomatoes from Mexico: Final Determination of Sales at Less Than Fair Value*, 84 Fed. Reg. 57401 (Oct. 25, 2019). The dumping margins for the three mandatory respondents were 3.91 percent, 17.02 percent, and 30.48 percent. “All other” Mexican exporters that were not mandatory respondents were assigned a rate of 20.91 percent. *Id.*

30. Following a challenge to the final determination in the continued investigation, this Court issued a decision on April 17, 2024, holding that Commerce’s resumption of the investigation with entirely new respondents and with a new investigation period was unlawful. *See Bioparques de Occidente, et al. v. United States*, 698 F. Supp. 3d 1265 (Ct. Int’l Trade 2024).

31. The Court remanded the case to Commerce with instructions to reconsider its final determination using data from the original respondents for the original 1995-96 investigation period.

32. Commerce issued its final redetermination on remand on October 22, 2024. In that determination, Commerce concluded that, because the 1996 data for Rancho Los Pinos was no longer verifiable, the dumping margin for Rancho Los Pinos should be based on total adverse facts available.

33. The "all others" rate, based on the average of the dumping margins for the mandatory respondents who were not assigned dumping margins based on total adverse facts available, was 17.09 percent.

34. Notably, Commerce's redetermination declined to hold that PAINSA was the successor-in-interest to Rancho Los Pinos, stating that "the information available is not sufficient to evaluate the changed circumstances of . . . Los Pinos . . . or to make determinations regarding [its] current operating [name] and status."

35. The Court affirmed the redetermination results, which were subsequently published in the Federal Register on May 1, 2025. *See Bioparques de Occidente, et al. v. United States*, 777 F. Supp. 3d 1332 (Ct. Int'l Trade 2025); *Fresh Tomatoes From Mexico: Notice of Court Decision Not in Harmony with the Final Determination of Antidumping Duty Investigation; Notice of Amended Final Determination,* 90 Fed. Reg. 18645 (May 1, 2025).

36. On July 17, 2025, Commerce issued instructions to CBP (Message 5198408), directing the agency to suspend liquidation "[f]or all imports of fresh tomatoes from Mexico entered, or withdrawn from warehouse, for consumption on or after 07/14/2025."

37. The instructions also directed CBP to "require a cash deposit equal to the cash deposit rates shown below," which, in pertinent part, were as follows:

Producer and/or Exporter: All Others

Case number: A-201-820-000

Cash Deposit Rate: 17.09%

. . .

Producer and/or Exporter: *Ranchos Los Pinos S. de R.L. de C.V*

Case number: A-201-820-995

Cash deposit rate: 273.43%

38. These instructions state that CBP was to apply the 273.43 percent adverse-facts-available rate to Rancho Los Pinos. The instructions do not have an individual rate for PAINSA, nor do they direct CBP to apply Rancho Los Pinos's punitive rate to PAINSA.

39. PPI thereafter entered tomatoes exported by PAINSA under the "all others" antidumping case number A-201-820-000, with a cash deposit rate of 17.09 percent, in accordance with Commerce's cash deposit instructions.

40. On or about August 27, 2025, CBP informed PPI's customs broker that the entries should be imported under antidumping case number A-201-820-995, the case number for Rancho Los Pinos, with a cash deposit rate of 273.43 percent. A CBP official also informed PPI's customs broker PPI's that CBP's Automated Commercial Environment ("ACE") listed PAINSA under case number A-201-820-995 as "Productora Agricola Industrial del Noroeste S.A. de C.V. (formerly known as Rancho Los Pinos S. de R.L. de C.V.)." The CBP official also stated that Commerce would have to make any modification to the listing for exporter PAINSA in ACE.

41. On August 28, 2025, counsel for PPI and PAINSA contacted officials at Commerce to notify them about the inaccuracies with PAINSA's exporter listing in ACE. Later that day, a Commerce official informed counsel for PPI and PAINSA that Commerce had been "alerted to the issue by CBP" and that "it should be resolved now."

42. Shortly thereafter, a CBP official emailed PPI's customs broker to inform her that "ACE has been updated, to reflect that for case A-201-820-995 the Manufacturer is only Rancho Los Pinos S. de R.L. de C.V."

43. Following that correction, CBP accepted PPI's entries of tomatoes exported by PAINSA under antidumping case number A-201-820-000 with a cash deposit rate of 17.09 percent.

44. On July 1, 2026, Commerce published a notice of opportunity to request an administrative review of the antidumping order on Fresh Tomatoes from Mexico for the period of review, from July 14, 2025, to June 30, 2026. *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review and Join Annual Inquiry Service List; Note Regarding Format of Review Requests,* 91 Fed. Reg. 39979 (July 1, 2026). On July 31, 2026, PAINSA filed a timely request for review of its exports (as part of a joint letter filed on behalf of five associations of Mexican tomato exporters and 63 individual Mexican producers and exporters). On the same date, the Florida Tomato Exchange filed a letter requesting reviews of 889 Mexican companies listed in an attachment to their request, with PAINSA included in that list as company number 722.

45. Commerce published its notice of initiation of the review on September 16, 2026. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 91 Fed. Reg. 56836 (Sept. 4, 2026). As of the date of this complaint, Commerce has not yet announced its selection of the mandatory respondents in this review.

46. On October 6, 2026, PPI received two Notices of Action from CBP indicating that, for a number of entries prior to the correction of the ACE system on August 28, 2025, the tomatoes exported by PAINSA should be entered under antidumping case number A-201-820-995, the case number for Rancho Los Pinos, with a cash deposit rate of 273.43 percent.

47. CBP has changed the entry information in ACE for PPI entries between July 14, 2025, and August 28, 2025, to identify case number A-201-820-995 and a dumping rate of 273.45

percent, even though the entries were accepted under case number A-201-820-000 and CBP never rejected the entries.

48. On October 22, 2026, PPI received a separate Notice of Action indicating that CBP would require an additional single-transaction bond in the amount of 256.43 percent *ad valorem* on any future entries of tomatoes exported by PAINSA.

50. CBP has refused to rescind the STB requirement.

**FIRST CAUSE OF ACTION**

51. Plaintiffs reallege and incorporate paragraphs 1 through 50 as if set forth fully herein.

52. The Administrative Procedures Act ("APA") authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

53. CBP's regulatory authority to require single transaction bonds is restricted to circumstances in which "acceptance of a transaction secured by a continuous bond would place the revenue in jeopardy or otherwise hamper enforce of all applicable laws or regulations." 19 C.F.R. §113.13(d)

54. Commerce has instructed CBP to apply case number A-201-820-000 to PAINSA's exports of fresh tomatoes and has instructed CBP to apply a cash deposit rate of 17.09% ad valorem to entries of fresh tomatoes exported by PAINSA..

55. Commerce has never issued a preliminary or final determination that the rate of 273.43 percent should be applied to exports by PAINSA.

56. CBP's imposition of a single transaction bond requirement for the difference between the 17.09 percent cash deposit rate applicable to PAINSA and the 273.43 percent adverse-facts-available rate lacks substantial evidence to support a reasonable finding that the revenue is in jeopardy absent such bonding.

57. CBP's imposition of a single transaction bond requirement for the difference between the 17.09 percent cash deposit rate applicable to PAINSA and the 273.43 percent adverse-facts-available rate is arbitrary, capricious, unreasonable and an abuse of discretion.

**SECOND CAUSE OF ACTION**

58. Plaintiffs reallege and incorporate paragraphs 1 through 57 as if set forth fully herein.

59. CBP must follow Commerce's instructions in assessing and collecting duties. CBP does not determine the "rate and amount" of antidumping duties under 19 U.S.C. § 1514(a)(2). CBP only applies antidumping rates determined by Commerce. CBP cannot modify Commerce's determinations, their underlying facts, or their enforcement.

60. CBP's October 6 Notices and its change of entry information in ACE for tomatoes exported by PAINSA to reflect antidumping case number A-201-820-995 and a cash deposit rate of 273.43 percent, and an STB of 256.43 percent was contrary to law.

**PRAYER FOR RELIEF**

61. WHEREFORE, Plaintiffs respectfully request this Court to:

(1) Find that CBP's imposition of an enhanced single-transaction bond requirement in the amount of 256.43 percent *ad valorem* on all entries of tomatoes exported by PAINSA is arbitrary and capricious, an abuse of discretion, and otherwise unlawful;

(2) Find that CBP's October 6, 2026, Notice of Action, which seeks to increase the cash deposit requirement for entries of tomatoes exported by PAINSA prior to August 28, 2025,

and its change of the entry information in ACE to reflect the rate of 273.43%, is unlawful and void;

(3) Direct CBP to change the entry data in ACE to show case number A-201-820-000 and a cash deposit rate of 17.09 percent for all entries exported by PAINSA since July 14, 2025;

(4) Declare that entries of subject tomatoes exported by PAINSA are to be entered under antidumping case number A-201-820-000 and subject to the "all others" cash deposit rate of 17.09 percent *ad valorem* until such time as Commerce may establish a separate case number and cash deposit rate for PAINSA;

(5) Issue an injunction forbidding CBP from requiring cash deposits in excess of 17.09 percent *ad valorem* or from imposing any additional bonding requirements in addition to that cash deposit requirement on any entries of subject tomatoes exported by PAINSA until such time as Commerce shall publish in the Federal Register a final determination in an administrative review covering PAINSA; and

(6) Provide such other relief as this Court deems appropriate.

Respectfully submitted,

*/s/ Erik D. Smithweiss*
Erik D. Smithweiss
Ned H. Marshak*

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

707 Wilshire Boulevard
Suite 4150
Los Angeles, CA 90017-3720
(213) 452-0863
esmithweiss@gdlsk.com

*599 Lexington Ave., 36th Floor
New York, NY 10022
(212) 557-4000
nmarshak@gdlsk.com

*Attorneys for Pinos Produce Inc. and Productora Agricola Industrial del Noroeste S.A. de C.V.*

Dated: November 12, 2026